■ LAWRENCE T. BABBIO, JR., Respondent, v SHERI LEE BABBIO, Appellant. [990 NYS2d 484]—

Order, Supreme Court, New York County (Laura Drager, J.), entered August 1, 2013, which, to the extent appealed from, granted so much of plaintiff's motion for summary judgment as sought a declaration that he is entitled to separate property credits for his contributions to the acquisition of the Park Avenue apartment, the Connecticut residence, and the Connecticut parcels, and declared the specific amounts of the credits to which plaintiff is entitled, and denied without prejudice so much of the motion as sought a declaration with respect to the joint Goldman Sachs and JP Morgan accounts and the interest in Greycroft Partners, L.P., declaring that plaintiff is entitled to separate property credits with respect to those items but that the amounts of the credits cannot be determined at present, unanimously modified, on the law, to deny the motion with respect to the Connecticut parcels and the funds paid at closing for the purchase of the Park Avenue apartment from the parties' joint account, and to declare that plaintiff is not entitled to separate property credits with respect to those items, and is not entitled to separate property credits with respect to the joint Goldman Sachs and JP Morgan accounts and the interest in Greycroft Partners, and otherwise affirmed, without costs.

The parties' prenuptial agreement provides, in pertinent part, that "[i]n the event of an Operative Event, Marital Property [as

defined elsewhere in the agreement] shall be distributed equally between [the parties] in accordance with the following provisions, except that if the parties have been married for ten (10) years or less and either party is able to identify One Million ($1,000,000) Dollars or more of Separate Property that was used for the acquisition of the Marital Property, that party shall first receive the amount of his or her contribution of Separate Property prior to the division of the remaining value of such property, if any" (¶ 6 [e]). "Operative Event" is defined as, inter alia, "the delivery by [either party] to the other of written notification . . . of an intention to terminate the marriage" (¶ 5 [a]).

Construing the parties' prenuptial agreement in accord with the plain meaning of its terms, and interpreting every part of the agreement "with reference to the whole" (*see Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007]), we find that eligibility for a separate property credit upon the distribution of marital property in the event of an "Operative Event" is determined at the time of the "Operative Event" and that the party seeking the credit must have contributed $1 million or more of his or her own separate property directly to the acquisition of the particular item of marital property at issue.

It is implicit in paragraph 6 (e) that the length of the parties' marriage is to be calculated as of the date of the Operative Event, and not, as the wife urges, as of the date on which the marital property is distributed. Moreover, the date of the Operative Event provides certainty that the date of distribution does not provide, and it is reasonable to infer that the parties intended that there be certainty with respect to the date their rights to separate property credits (and other rights and obligations) are determined. Support for this construction is also provided by clauses stating that "the Marital Property shall be valued as near as practicable to the time of the Operative Event" (¶ 6 [e] [i]) and that "the distribution contemplated by this paragraph shall occur as quickly as practicable following the happening of an Operative Event" (¶ 6 [e] [iv]). Since the Operative Event occurred before the parties had been married 10 years, the husband is eligible for separate property credits to the extent he contributed $1 million or more of separate property to the acquisition of any marital property.

We conclude that the wife is correct in regard to the husband's recouping of his separate property; the husband must show that he contributed $1 million or more of separate property to the acquisition of each item of marital property to be distributed, rather than that he contributed $1 million or more in the aggre-

gate. To ascertain the parties' intentions in regard to the operation of the separate property credit, we consider the phrasing of the separate property credit exception of 6 (e), interpreting it with reference to the apparent purpose of paragraph 6 and the general purpose of the entire agreement as a whole (*see generally Beal Sav. Bank v Sommer*, 8 NY3d at 324-325). The general purpose of the agreement is to provide a degree of protection to both parties. In the event the marriage lasted less than 10 years, the agreement protects the husband from the absolute loss of large amounts of separate funds he contributed to the marriage, while also protecting the wife from having everything that was purchased for their use as a married couple reclaimed by the husband.

The language of the agreement's exception to the rule of dividing marital property equally provides: "[I]f the parties have been married for ten (10) years or less and either party is able to identify One Million ($1,000,000) Dollars or more of Separate Property that was used for the acquisition of *the Marital Property*, that party shall first receive the amount of his or her contribution of Separate Property prior to the division of the remaining value of *such property*, if any" (emphasis added). The use of the definite article before "Marital Property," and the later reference to "such property," reflect an intent to apply the credit to each piece of marital property as it is being divided, a view supported by the subparagraphs that immediately follow, which specifically contemplate an item-by-item consideration of the marital property for purposes of its division. Moreover, paragraph 4 (d) defines "Marital Property," inter alia, as "all property used jointly by the parties with a cost value of $100,000, or less," but under the aggregation theory the husband would get all the proceeds of every sale, and the wife would lose the benefit of the provision, rendering it meaningless. Indeed, given the husband's enormous wealth and the parties' stated intention to reside in New York, under the aggregation theory, the husband's contribution of more than $1 million to a marital residence alone would meet the threshold, rendering the creation of a threshold provision meaningless.

The prenuptial agreement provides that separate property transferred into any form of joint ownership becomes marital property (¶ 4 [a]). That is, separate property placed into joint ownership does not retain its character as separate property. Thus, the husband also must show that he contributed separate property directly to the acquisition of the marital property at issue, not merely that he placed his separate property into a joint account from which funds were subsequently withdrawn and

used for the purchase of marital property. Paragraph 4 of the agreement, which defines marital property as property transferred into joint ownership, makes no exception for transfers made as a convenience.

The husband failed to demonstrate that he contributed $1 million or more in separate property to the acquisition of the Connecticut parcels and to the parties' interest in Greycroft Partners. Thus, he is not entitled to a separate property credit for his contributions to the acquisition of those properties.

Nor is the husband entitled to a credit for separate property he transferred into the parties' joint Goldman Sachs and JP Morgan accounts. In contrast with paragraph 4, which specifies that the category includes property "transferred by either party into any form of joint ownership" *as well as* property "acquired with joint funds, acquired out of joint accounts or acquired by use of credit cards in joint name," the separate property credit provision is phrased to apply only to separate property used directly for the "acquisition" of marital property. Contrary to the husband's contention, it is not reasonable to interpret the term "acquisition" so broadly as to include the act of obtaining marital property via transfer.

To the extent marital property is to be distributed under the agreement, each party is entitled to appreciation on his or her share, which includes post-Operative Event appreciation on the Goldman Sachs and JP Morgan accounts.

Since the husband showed that approximately $5 million of his separate property was used to acquire the Connecticut residence, he is entitled to a separate property credit for that contribution.

The husband is not entitled to a credit for the $8.5 million paid from the parties' joint account at closing on the Park Avenue apartment. Although those funds were previously his separate property, they became marital property when he transferred them into the joint account. Since the husband's transfer of separate funds into a joint account transformed those funds into marital property for all purposes, when funds from that joint account were then used for the purchase of the parties' apartment, there was no use of separate property for the acquisition of the apartment. In any event, there is no evidence that the joint account was established only for convenience, or that the fund transfer was merely transitory, since the funds remained in the joint account for a month (*cf. Wade v Steinfeld*, 15 AD3d 390 [2d Dept 2005] [money kept in joint account for three days]).

The husband is entitled to a credit for the $2.3 million he

paid from his separate property for renovation costs on the Park Avenue apartment. We find that the renovation costs expended by the husband from his separate property were inextricably bound to the acquisition of the apartment itself. A separate property credit is therefore also properly claimed for the $910,000 down payment on the Park Avenue apartment that the husband paid from his separate property since the $1 million threshold for the separate property contribution to the apartment has been met. Concur—Friedman, J.P., Acosta, Saxe, Feinman and Gische, JJ.